THE PEOPLE ex rel. THE STATE BOARD OF CHARITIES, Relator, *v.* THE NEW YORK SOCIETY FOR THE PREVENTION OF CRUELTY TO CHILDREN, Defendant.

(Supreme Court, New York Special Term, October, 1898.)

Visitation by State Board of Charities — A corporation, in part, a subordinate governmental agency, protecting children, and, in part, a charitable institution, is subject to visitation only as to the latter branch.

A corporation, organized under chapter 130 of the Laws of 1875, which, in addition to taking legal measures to prevent cruelty to children and to enforce the laws in regard to them, also feeds, clothes and temporarily assists them, as well as destitute families, and furnishes them with medical aid, doing this latter work from funds supplied in part by public moneys, is, as to this latter work or branch of its duties, to be deemed a " charitable " institution, and, therefore, as to that branch, is subject to visitation by the State Board of Charities, under the provisions of section 11 of article VIII of the Constitution of 1894 and those of sections 2 and 9 of chapter 546 of the Laws of 1896.

The corporation is, as to its other functions of preventing cruelty etc., to be regarded as a subordinate governmental agency and the State Board of Charities has no jurisdiction over that branch of its duties.

All charitable institutions, whether they receive aid from the public authorities or not, are subject to the visitation and inspection by the State Board of Charities.

MOTION for a peremptory writ of mandamus directing the defendant to permit the relator to visit and inspect its grounds, buildings, books and papers, and to exercise the visitorial powers speci-

**54** PEOPLE ex rel. STATE BOARD *v.* N. Y. S. P. O. C. C.

Supreme Court, October, 1898. [Vol. 25.

fied in article VIII of the Constitution, and in the State Charities Law (Chap 26 of General Laws).

The opinion states the material facts.

T. E. Hancock, attorney-general, for relator.

Eldridge T. Gerry, for defendant.

GIEGERICH, J. The defendant is a corporation organized under chapter 130 of the Laws of 1875, authorizing the formation of societies for the prevention of cruelty to children. According to the articles of incorporation its " particular business and objects " are " the prevention of cruelty to children and the enforcement by all lawful means of the laws relating to or in anywise affecting children." Since its organization the defendant has been supported by private contributions and appropriations made by the municipal authorities.

The defendant, among other work prosecuted by it, receives on commitment, subject to the order of courts and magistrates, children charged with the commission of crime, or held as witnesses pending the prosecution of a criminal action against persons charged with cruelty, and receives and brings into court for disposition children found in a state of destitution, as prescribed by the statute. Penal Code, §§ 291, 293. Two officers are maintained by it in every Magistrate's Court, who, upon the order of the magistrate, investigate applications for the commitment of children and make written reports in regard thereto for his information. Isolating rooms are also provided by it for children suffering from contagious disease while temporarily in the care of its institution. Previous to commitment, and in the event of an application for the discharge of children, the defendant advises the various institutions having the custody of such children, of the circumstances of the families affected. It defends the custody by institutions of children committed through its instrumentality, without charge to the institution, and in every case where an indictment is found through its agency, the defendant secures the attendance of witnesses and assists the district attorney in the preparation for trial. It receives the moneys directed to be paid under the statute (Penal Code, § 288; Code of Crim. Pro., § 921) by financially responsible parents for the support of children committed at their instance to institutions, which moneys it pays over quarterly to the comp-

PEOPLE ex rel. STATE BOARD v. N. Y. S. P. C. C. C. 55

Misc.]                    Supreme Court, October, 1898.

troller, and in the event of disobedience to such orders, it applies to the court for their enforcement.

The defendant owns and occupies a seven-story building situate at the corner of Twenty-third street and Fourth avenue, in the borough of Manhattan, in which there are supported and cared for large numbers of children, the average daily number being about fifty. The relator claims that the defendant is a charitable and eleemosynary institution within the meaning of article VIII of the revised Constitution, particularly sections 11 and 14 thereof, as well as the State Charities Law (chap. 546, Laws of 1896; chap. 26 of the General Laws), and especially sections 9, 10 and 11 of said chapter.

The latter denies that it is subject to the jurisdiction of the relator, and opposes the application on the ground that it is part of the legal machinery of the state for the enforcement of the laws relating to children. If such were the sole character and purpose of the defendant, then, obviously, the power of visitation and inspection of a charitable, eleemosynary, correctional or reformatory institution, conferred upon the relator by the revised Constitution and statutes above cited, could not be exercised in the present case. It appears, however, from the papers submitted that, besides performing the work or functions above detailed, the defendant affords shelter to children for the night, furnishes food, clothing and medical attendance to them while in its care or custody and extends aid to needy families and children.

It also appears that the defendant has at various times since its organization called public attention to these acts of charity and has solicited financial aid, as well as contributions of shoes and clothing, for the continuance thereof, thus clearly showing that to be one of the purposes of its formation. Such being the case the institution conducted by the defendant was to an extent, at least, " charitable " within the meaning of the provisions of the Constitution and statutes above referred to, and, therefore, in that respect comes within the purview of the relator's powers. People ex rel. N. Y. Inst. for Blind v. Fitch, 154 N. Y. 14.

It is contended by the defendant that the Constitution does not contemplate jurisdiction of the relator over private charitable corporations, except when they act as disbursing agents of public funds.

By section 11, article VIII of the Constitution, however, the relator is authorized to " visit and inspect *all* institutions, whether

**56** PEOPLE ex rel. STATE BOARD *v.* N. Y. S. P. O. C. C.

Supreme Court, October, 1898.                    [Vol. 25.

state, county, municipal, *incorporated or not incorporated*, which are of a charitable, eleemosynary, correctional or reformatory character." This clearly applies to all institutions of the nature above mentioned, whether under public or private control. The terms state, county or municipal are not to be construed as limiting the powers of the relator, but are merely descriptive of the institutions affected so far as they receive aid from the public authorities in the separate political subdivisions of the state.

These views are, to my mind, confirmed by the definition of the term " *state* charitable institutions " as contained in section 2 of the State Charities Law, and the provisions of section 9 of the same enactment.

Section 2, *supra,* provides: " The term state charitable institutions, shall include all institutions of a charitable, eleemosynary, correctional or reformatory character, supported in whole or in part by the state, except institutions for the instruction of the deaf and dumb and the blind, and such institutions which, by section eleven, article eight of the constitution, are made subject to the visitation and inspection of the commissioner in lunacy or the prison commission, whether managed or controlled by the state or by private corporations, societies or associations."

Section 9, *supra,* authorizes the relator to " visit, inspect and maintain a general supervision of all institutions, societies or associations which are of a charitable, eleemosynary, correctional or reformatory character, whether state or municipal, incorporated or not incorporated."

Assuming, however, that I am in error as to the views above expressed, it is nevertheless an undisputed fact, that since the year 1895, the defendant has received annually from the city of New York the sum of $30,000 for its " uses and purposes " pursuant to chapters 25 and 613 of the Laws of 1894; and section 230 of the Greater New York charter.

The learned counsel for the defendant insists as well that, since none of these moneys have been used or appropriated for the support, care or use of any children or inmates of that portion of its institution which has been characterized as charitable, it is not supported in whole or in part by public funds. With respect to this contention it should be borne in mind that the defendant can only receive and retain a child on commitment by a court or magistrate at its own expense.

The primary object of the defendant, as gathered from the reports and addresses of its officers, is the rescue of children.    If I am correct in this, its operations, necessarily, must take a wider scope than the mere care of children temporarily committed by a court or judicial officer.    This view finds confirmation in the ninth annual report of the chairman of the board of directors, in which he says (pp. 12, 13): " It is one of the peculiarities of this institution that its doors are always open and no child in the city, either male or female, has ever been turned away without shelter for the night.    It is important for members of this society to bear this fact in mind, as almost all of the institutions caring for children are closed at 9 p. m., and admission thereafter refused.  *  *  * The public should bear in mind that the usefulness of this institution is limited only by the amount of pecuniary assistance given."

I am further confirmed in such view by the annual reports of the defendant since its incorporation, extracts from which have been incorporated into and made a part of the moving papers herein; from which it appears that the defendant has not only sheltered, fed and clothed a large number of children in its reception-room; but has extended and still extends temporary aid to a considerable number of destitute families and children.

While it is undoubtedly true that none of the public moneys so received by the defendant have been used for the support or maintenance of any child committed to its care by a court or magistrate, it is also true that it has, as seen, applied them together with other moneys contributed by private individuals towards the maintenance of a " charitable institution " as that term has been defined by the Court of Appeals in the case of People ex rel. N. Y. Inst. for Blind v. Fitch, *supra*.    Such expenditures were manifestly for the " uses and purposes " of the defendant, and, therefore, authorized by the enactments above cited.

The defendant having so received said sums, it is apparent that its so-called " charitable " institution is supported in part by public moneys, and consequently subject to the jurisdiction of the relator.

It is further argued in behalf of defendant, that the above specified acts of charity are merely incidental to the exercise of its functions as a " subordinate governmental agent " (see Trustees of Exempt Firemen's Fund v. Roome, 93 N. Y. 313, 327), and that hence it is not an institution subject to visitation and inspection by the relator.    The case of People ex rel. N. Y. Inst. for Blind v. Fitch, *supra*, however, does not favor this contention.    There the

**58**  PEOPLE ex rel. STATE BOARD *v.* N. Y. S. P. O. C. C.

Supreme Court, October, 1898.     [Vol. 25.

obvious purpose of the legislature in incorporating and continuing the relator, as well as in appropriating the money of the state to the purchase of its real estate, to the erection of its buildings thereon, and to the support of its indigent inmates, was to aid in providing for the education of the unfortunate blind, and, so far as necessary, to aid in supporting and maintaining them, at least, while acquiring an education.   The relator claimed that it was wholly an educational institution, but the court, speaking through Martin, J., held otherwise.   In the course of the opinion the learned judge said (pp. 26, 27): " The relator is, doubtless, to an extent, an educational institution.   But that fact alone does not justify the conclusion that it is not a charitable institution within the meaning and intent of the Constitution and statutes.   An institution may be in a sense educational and at the same time be wholly or partly charitable, as the education and maintenance of indigent pupils, while being educated, may be the subject of charity as well as support alone.   An institution may be both educational and charitable, and if so, it falls within the provisions of the Constitution and statutes, as it is to be observed that the provisions are that the board of charities shall visit and inspect all institutions which are of a charitable character or design, and, hence, to fall within that description, it is not necessary that the institution shall be wholly charitable.   It need only be an institution which is wholly or partly charitable in its character and purpose."

The logical sequence resulting from these views is that the defendant must be regarded as a charitable institution so far as it feeds, clothes, and assists children and destitute families and furnishes them with medical aid and attendance.   With respect to its other work or functions above specified, I am of the opinion, that the same may be characterized in the language of the above cited case of Trustees of Exempt Firemen's Fund v. Roome, as that of a " subordinate governmental agency," and, therefore, so far as they are concerned, the relator has no jurisdiction.

The motion is, therefore, granted only to the extent of requiring the defendant to submit to an inspection and visitation by the relator so far as pertains to its feeding, clothing and assistance of and furnishing of medical aid and assistance to children and destitute families.

Ordered accordingly.